```
         IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF ARKANSAS
                 FAYETTEVILLE DIVISION
```

**HOLLY BURNS**                                                              **PLAINTIFF**

      **v.**          **Civil No. 06-5201**

**FORD MOTOR COMPANY**                                                       **DEFENDANT**

### O R D E R

Now on this 24th day of January, 2008, come on for consideration **Ford Motor Company's Motion For Summary Judgment On Plaintiff's Roof Defect Claim** (document #43) (the "Roof Defect Motion") and **Ford Motor Company's Motion For Summary Judgment On Plaintiff's Glass Defect Claim** (document #46) (the "Glass Defect Motion"), and from said motions, the supporting documentation, and the responses thereto, the Court finds and orders as follows:

1.   In this products liability action, plaintiff Holly Burns ("Burns") alleges that she was injured in a rollover accident involving a 2004 Mercury Mountaineer which was designed, manufactured, and sold by defendant Ford Motor Company ("Ford").

In her Amended Complaint, Burns alleges that there were defects in the occupant restraint system, passenger compartment, roof, glass, safety and protection systems of the vehicle. She further alleges that Ford failed to give adequate warnings with regard to these alleged defects. She alleges negligence, gross negligence, and violation of the Arkansas Unfair and Deceptive Trade Practices Act.

2.   Summary judgment should be granted when the record,

viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994).** Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995).** The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, 838 F.2d 268 (8th Cir. 1988).

    3.  Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

    \*  On or about May 24, 2004, while operating a 2004 Mercury Mountaineer designed and manufactured by Ford, Burns was injured in a single car rollover accident.

    \*  Burns' injuries were to her left arm and shoulder and to both legs, and were allegedly caused by the driver's side window breaking out and allowing her left arm and legs to extrude from

the passenger cabin of the Mountaineer.

* The driver's side window in the Mountaineer was equipped with tempered, rather than laminated, glass.

* Burns has identified Dr. Stephen Batzer as an expert witness who will testify in support of her design defect claim.

The remainder of what the parties characterize as "undisputed facts" do not actually fall into that category at all. Some are restatements of Burns' allegations; some are assertions that a witness testified to thus-and-such (but not that thus-and-such is true); some are recitations about the text and history of laws and regulations. It can, therefore, be seen that there are very few undisputed facts in this case.

4. In its Glass Defect Motion, Ford argues that Burns' glass defect claim is preempted by regulations promulgated pursuant to the National Traffic and Motor Vehicle Safety Act, which approved the use of tempered glass in vehicle side windows.

In its Roof Defect Motion, Ford challenges the basis of Dr. Batzer's opinion to the extent it is based on "experimental tests," alleging that those relied upon were not conducted under conditions substantially similar to those surrounding the incident at issue, as required by **Cowens v. Siemens-Elema AB, 837 F.2d 817 (8th Cir. 1988).**

Burns, in response, points out that she is not asserting two separate and divisible claims. Her assertion is that the design

of the vehicle was defective, in that it was not "crashworthy" because of the interrelated design of the roof and windows and the alleged inappropriate choice of glazing, given the design of the roof.  As Dr. Batzer expressed it, "crash worthiness is the glass and the roof.  For their level of roof strength, tempered glass was an inappropriate choice.  Or you could say for their choice of side glass, their roof strength was completely inappropriate and defective."

The Court rejects Ford's attempt to cast Burns' Amended Complaint into one which alleges two separate and unrelated claims.  Burns, as plaintiff, is master of her complaint, **BP Chemicals Ltd. v. Jiangsu Sopo Corp.**, **285 F.3d 677, 685 (8th Cir. 2002)**, and is allowed to cast her claim in the shape she chooses.  Her case must stand or fall on that choice, not Ford's, and the motions will be analyzed in light of this circumstance.

5.   The Court turns first to the preemption issue raised in connection with Burns' claim that the side-window glazing in the Mountaineer was defectively-designed.  Ford's position on this issue is bottomed on **Geier v. American Honda Motor Co., Inc.**, **529 U.S. 861 (2000),** in which the Supreme Court held that where a rule of state tort law would stand as an obstacle to the accomplishment of a federal motor vehicle safety standard, the tort action is preempted.  Alternatively, however, **Geier** recognized that if the federal regulation merely established a minimum standard, a state

tort action seeking to impose liability for not exceeding that minimum would not necessarily be preempted.

Burns contends that the glazing standard in question is, in fact, nothing more than a minimum performance standard, citing **O'Hara v. General Motors Corp.**, **508 F.3d 753 (5th Cir. 2007)**. **O'Hara** involved the precise issue raised by Ford here, i.e., whether the existence of the federal safety standard for glass used in motor vehicle side windows preempted a state law claim that the vehicle was defective for using tempered rather than "advanced" glazing[1], when both types were approved by the safety standard.  The Fifth Circuit compared the glazing standard with the airbag standard involved in **Geier**, and carefully analyzed the text and history of the glazing standard, before concluding that, unlike the airbag standard, the glazing standard is a minimum safety standard.

The Court finds the Fifth Circuit's careful reasoning persuasive, and likewise concludes that the glazing standard is a minimum standard, and that a tort claim such as the one at bar is not preempted thereby.  This is especially true given that Burns'

---

[1] O'Hara explained the different properties of tempered and "advanced" glazing. Tempered glass is "a single piece of specially treated sheet, plate, or float glass possessing mechanical strength substantially higher than annealed glass.  When broken at any point, the entire piece breaks into small pieces that have relatively dull edges as compared to those of broken pieces of annealed glass."  "Advanced glazing" includes both laminated glass and glass-plastic glazing material.  Laminated glass is "two or more pieces of sheet, plate, or float glass bonded together by an intervening layer or layers of plastic material.  It will crack or break under sufficient impact, but the pieces of glass tend to adhere to the plastic.  If a hole is produced, the edges are likely to be less jagged than would be the case with ordinary annealed glass."  508 F.3d at 755, fn.1.

claim is not that laminated glass should be required on all motor vehicle side windows, but rather that it should have been used on the Mountaineer, given its window size and construction, roof construction, and alleged propensity to roll over.

    6.   Ford's Roof Defect Motion is bottomed on a challenge to the testimony of Dr. Batzer, to the extent that his testimony is based on certain vehicle rollover tests and one real-life vehicle rollover.  Ford contends that these tests, and the real-life incident, are not sufficiently similar to Burns' accident to be used as the basis of Dr. Batzer's opinion.

When "experimental testing" is a component of an expert witness opinion, one of two situations may obtain.  If the testing is intended to reconstruct the incident in question, i.e., to show how it happened, substantial similarity of conditions is required.  If the testing is intended to demonstrate general scientific or technical principles, this requirement no longer applies. **McKnight by and through Ludwig v. Johnson Controls, Inc.**, **36 F.3d 1396 (8th Cir. 1994)**.

The court in **McKnight** recognized that "the distinction between evidence offered as a reconstruction of the accident and evidence offered to demonstrate scientific principles is very difficult to draw," citing a First Circuit case, **Fusco v. General Motors Corp.**, **11 F.3d 259 (1st Cir. 1993)**.  In **Fusco** the court noted that "the critical point is not one of labels."  Instead,

the key question is "whether the demonstration is sufficiently close in appearance to the original accident to create the risk of misunderstanding by the jury, for it is that risk that gives rise to the special requirement to show similar conditions."

> Scientific principles, when demonstrated in a fairly abstract way, are quite unlikely to be confused with the events on trial. The more troublesome cases, however, are ones like this one where some principles of some kind may be demonstrated but in a fashion that looks very much like a recreation of the event that gave rise to the trial.

**Fusco**, 11 F.3d at 264, fn.5.

> The Eighth Circuit, in **McKnight**, agreed:

> [E]xperimental evidence falls on a spectrum and the foundational standard for its admissibility is determined by whether the evidence is closer to simulating the accident or to demonstrating abstract scientific principles. The closer the experiment gets to simulating the accident, the more similar the conditions of the experiment must be to the accident conditions.

**36 F.3d at 1402**.

At least three experimental tests figure in Dr. Batzer's opinions:

* a dolly rollover test (a type of rollover simulation) conducted by Volvo on a 2003 Volvo XC90 at its facility in Gothenburg, Sweden;

* a Volvo XC90 promotional clip showing a dolly rollover test, available on the internet; and

* a video of a Volvo XC90 dolly rollover shown at a program presented by the Society of American Engineers.

None of these tests purports to recreate Burns' accident. They were not conducted on a Mountaineer, nor were they conducted by anyone employed by or on behalf of Burns. Indeed, they were not conducted for purposes of this case by any party, but were conducted by or on behalf of Volvo, to demonstrate the performance of its own product. Dr. Batzer relies upon them because it is his opinion that the roof/glazing design of the Volvo XC90 was an available alternative to the design of the roof/glazing structure used in the Mountaineer. Under these circumstances, the Court finds the dolly rollover tests closer to the end of the spectrum which deals with demonstrating abstract engineering principles - how particular materials and combinations of materials react to particular forces - than to the end of the spectrum which deals with simulating the accident. It is unlikely that a jury could be misled into believing that these tests recreated or simulated Burns' accident.

The real-world incident also involved a Volvo XC90, which rolled over several times "at highway speed." It was not an experiment at all, but an actual event, and for that reason poses little risk that a jury would believe it was a simulation of Burns' accident. Like the experimental tests, the Court finds that this event tends to supply information about performance in general rather than suggest a simulation of Burns' accident, and does not find it likely that a jury could understand otherwise.

7. Ford also appears to contend that Dr. Batzer could not reasonably conclude, from the foregoing tests and real-world incident, that his proposed alternate design for the Mountaineer would have prevented Burns' injuries. This objection goes to weight, rather than admissibility.

Admissibility of expert witness testimony is governed by **F.R.E. 702,** which provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As noted by the Supreme Court in **Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993),** the Federal Rules take a "general approach of relaxing the traditional barriers to 'opinion' testimony." Subsequent cases have stressed that **Rule 702** is a rule of admissibility rather than exclusion. "The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." **Sappington v. Skyjack, Inc., --- F.3d ---, 2008 WL 53227 (8th Cir. 2008)**(internal citations and quotation marks omitted).

**Daubert** suggests four lines of inquiry that may be appropriate in determining whether an expert witness meets the standards set by **F.R.E. 702,** while stressing that this is not "a

-9-

definitive checklist or test."  These lines of inquiry are:

*   Can the theory or technique relied upon by the witness be tested?

*   Has the theory or technique been subjected to peer review and publication?

*   In the case of a particular technique, what is the known or potential rate of error for its results?

*   Has the theory been widely accepted in the relevant scientific community?

In the case of the tests upon which Dr. Batzer relies, he explained in his deposition that dolly rollover tests are standardized tests used in the automotive industry to evaluate the ability of a vehicle to withstand damage during rollover accidents.  While the conclusions that Dr. Batzer draws from these tests might be flawed - a matter upon which the Court offers no opinion - his reliance upon them cannot be said to violate the principles of **F.R.E. 702** or **Daubert** and its progeny.

In addition, the Court notes that Dr. Batzer does not purport to base his opinions entirely upon the tests and real-world rollover.  He testified that he based his opinions in this case also on his education, background, experience, personal testing, literature review, defense expert reports, and glass strength testing, among other data.  Ford does not question Dr. Batzer's qualifications as an expert witness, and indeed his resume

-10-

indicates that he has studied, taught, and published extensively in the area of expertise for which he is offered.

For all these reasons, the Court finds that Ford's objections to Dr. Batzer's conclusions go to their weight, not to their admissibility.

8. Ford also contends that it is entitled to summary judgment on Burns' claim that Ford violated the ADTPA, which gives a private individual a cause of action for "actual damages, if appropriate, and reasonable attorney's fees" if she "suffers actual damage or injury as a result of an offense or violation" thereof. **A.C.A. §4-88-113(f).** The Court does not find that this argument has been fleshed out sufficiently to warrant summary judgment in favor of Ford.

9. For all the foregoing reasons, the Court concludes that both motions here under consideration should be denied.

**IT IS THEREFORE ORDERED** that **Ford Motor Company's Motion For Summary Judgment On Plaintiff's Roof Defect Claim** (document #43) is **denied.**

**IT IS FURTHER ORDERED** that **Ford Motor Company's Motion For Summary Judgment On Plaintiff's Glass Defect Claim** (document #46) is **denied.**

**IT IS SO ORDERED.**

                                                /s/ Jimm Larry Hendren
                                              **JIMM LARRY HENDREN**
                                              **UNITED STATES DISTRICT JUDGE**